## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

BRAD BARBACK                                              CIVIL ACTION

VERSUS

                                                         NO. 20-515-SDD-EWD

BRYAN FISHER, ET AL.

## RULING AND ORDER

Before the Court is a Motion for Protective Order and Motion to Quash ("Motion for Protective Order"),[1] filed by Bryan Fisher ("Fisher") and Bryan D. Fisher, LLC (the "Firm") (collectively, "Defendants"). Defendants seek a protective order regarding and/or an order quashing the Rule 30(b)(6) Notice of Deposition issued by Brad Barback ("Plaintiff") to the Firm. Plaintiff opposes the Motion for Protective Order.[2] Also before the Court is a Motion to Compel Further Responses to Interrogatories ("Motion to Compel"),[3] filed by Plaintiff. Plaintiff seeks to compel further responses from Defendants to Plaintiff's First Set of Requests for Production and to Plaintiff's Second Set of Interrogatories.[4] Defendants oppose the Motion to Compel.[5] The topics of information at issue in the Motions largely overlap.

For the reasons explained below, each motion is granted in part and denied in part.[6]

---

[1] R. Doc. 18.
[2] R. Doc. 26.
[3] R. Doc. 21.
[4] *See* R. Doc. 21-3 (Defendant's Objections and Responses to Plaintiff's Requests for Production (First Set)); R. Doc. 21-12 (Defendant's Objections and Responses to Plaintiff's Interrogatories to Bryan Fisher (Second Set)).
[5] R. Doc. 30.
[6] Plaintiff's Motion to Compel does not comply with the requirements of Local Civil Rule 37, in that it does not recite each discovery request and response verbatim. Additionally, it is not clear that counsel fully conferred in an effort to resolve their disputes over certain discovery issues because they reached an impasse as to others. *See* R. Doc. 27, p. 2. Given the lengthy telephone conference with the parties regarding these issues (R. Doc. 27), and in the interests of efficiency, the undersigned will rule on the substance of the Motions, notwithstanding these procedural deficiencies. Only those discovery areas in dispute are addressed. Responses to discovery requests indicating that there are no responsive documents or that the documents sought are not within Defendants' possession, custody, or control are likewise not addressed. Counsel are reminded of their obligations under the Federal Rules of Civil Procedure and Local Civil Rules to cooperate in discovery, to minimize litigation costs, and to confer in good faith in an effort to resolve discovery disputes before seeking Court intervention.

## I.  BACKGROUND

On August 12, 2020, Plaintiff, a lawyer, filed suit against his former employer, the Firm, and its sole member, Fisher, asserting claims for retaliation under the Fair Labor Standards Act ("FLSA"),[7] for reprisal in violation of the Louisiana Whistleblower Protection statute,[8] and for violation of the Louisiana Unfair Trade Practices Act ("LUPTA").[9] Plaintiff seeks the following damages: "(1) General, compensatory, and special damages, including past and future lost earnings, backpay, benefits, front-pay in lieu of reinstatement, loss of reputation, loss of employability, and mental anguish; (2) Liquidated, punitive, and treble damages; (3) Attorney fees and costs; (4) Pre- and post-judgment interest; and (5) All such other legal and equitable relief that may be proper."[10]

Plaintiff alleges that after being recruited by Fisher in September 2019, he left his position at another firm and began working for the Firm.[11] Plaintiff initially worked as a "1099 contract attorney" at the Firm in October 2019 before becoming a "W-2 employed attorney" in January 2020.[12]  On April 2, 2020, Defendants terminated Plaintiff's employment with the Firm.[13]

The parties' views on why Plaintiff was terminated vary greatly. Plaintiff claims that he was fired in retaliation and/or as reprisal for his "refusal to participate in" and for "complaining, and encouraging another employee to complain, about an unlawful work for free scheme concocted by Fisher."[14] Conversely, Defendants contend that they had legitimate, non-retaliatory reasons for terminating Plaintiff's employment.[15]

---

[7] 29 U.S.C. § 201, *et seq*.
[8] La. R.S. § 23:967
[9] La. R.S. § 51:1401, *et seq*.
[10] R. Doc. 1, at p. 18 (Prayer for Relief).
[11] R. Doc. 1, ¶ 15.
[12] R. Doc. 1, ¶ 15; R. Doc. 18, ¶ 1.
[13] R. Doc. 1, ¶¶ 34-50; R. Doc. 18, ¶ 1.
[14] R. Doc. 1, ¶ 2 (cleaned up). Plaintiff explains Fisher's scheme as follows: "Fisher concocted a scheme to exploit the Covid-19 pandemic, pressure his employees to work without pay, and use federal and state unemployment benefits to indirectly fund the operation of his firm." *Id*.
[15] R. Doc. 18-2, p. 1. *See also* R. Doc. 10 (Defendant's Answer), pp. 1-4, at Third Defense ("If it is determined that Plaintiff's alleged protected status or actions were a motivating factor (and/or illicit motivation) in any employment action

The parties have engaged in various discovery efforts, including interrogatories, requests for production of documents, depositions, and an attempted Rule 30(b)(6) deposition of the Firm, and multiple discovery disputes have arisen. In addition to several exchanges detailing their disputes over the relevancy of the information sought, Defendants have also expressed concern that responding to Plaintiff's requests may require the disclosure of Defendants' "confidential information regarding client identities, work product, and attorney-client privileged information without having first received client consents in violations of Louisiana Rule of Professional Conduct 1.6."[16]

On June 3, 2021, a telephone conference was held with counsel for the parties to discuss the Motions.[17] After noting that it appears that both parties raise valid arguments/objections to some issues and overbroad arguments/objections to others, a lengthy discussion on the Motions was had. During this discussion, the parties answered questions about particular issues/objections raised in the Motions and related attachments considering the scope of discovery here, *i.e.*, what is relevant to Plaintiff's claims and Defendants' defenses. Notwithstanding the fact that counsel's responses did not suggest that they had conferred as robustly as they should have before seeking Court intervention, counsel were given guidance on the Motions and encouraged to have ongoing discussions in an effort to resolve some (or all) of their discovery disputes as raised in the Motions. Because the parties were apparently unable to resolve their disputes, the Motion for Protective Order and Motion to Compel are now fully briefed and ripe for resolution.

---

taken by Defendants (which Defendants deny), then Defendants plead that they would have taken the same action for reasons that were lawful and not related to Plaintiff's alleged protected status or actions…"), Eighth Defense ("Legitimate, non-retaliatory reasons exists for all personnel actions with respect to Plaintiff which are the subject matter of this lawsuit."), Ninth Defense ("In the alternative, in the event the Defendants or anyone for whom they are responsible, are found liable under any theory of federal or state law (which Defendants deny), Defendants assert that the sole and proximate cause of any injury to Plaintiff was Plaintiff's own fault…"), Twelfth Defense ("None of Plaintiff's alleged protected activities (all of which are denied) caused the termination of his employment, or any other purported employment actions taken by Defendants."), Thirteenth Defense ("At all times relevant to this matter, Defendants acted in good faith, for just cause, and with reasonable grounds for believing they were within their lawful rights and were in compliance with relevant laws and/or statutes."), and Nineteenth Defense ("At all times, Defendants acted in accordance with established employment policies, procedures and practices.").

[16] R. Doc. 18-2, p. 13.
[17] R. Doc. 27.

## II.    LAW AND ANALYSIS

### A.    Legal Standards

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[18] and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[19] The Court must additionally limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[20] The court may also limit a Rule 30(b)(6) deposition notice to the extent it requests the organization to designate an agent to testify on topics of information that are overly broad, vague, or ambiguous.[21]

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[22] Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped

---

[18] *Crosby v. Louisiana Health Service and Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) ("Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'"), citing Fed. R. Civ. P. 26(b)(1) and *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982).
[19] Fed. R. Civ. P. 26(b)(1).
[20] Fed. R. Civ. P. 26(b)(2)(C).
[21] *See, e.g., Scioneaux v. Elevating Boats, LLC*, No. 10-0133, 2010 WL 4366417, at *3 (E.D. La. Oct. 20, 2010) (quashing deposition notice where the plaintiff failed to particularize the topics of discussion in Rule 30(b)(6) deposition notice); *In re Katrina Canal Breaches Consolidates Litigation*, No. 05-4182, 2008 WL 4833023 (E.D. La. July 2, 2008) (granting motion for protective order to the extent topics listed in a 30(b)(6) notice were overly broad, vague and ambiguous); *Padana Assicurazioni–Societa Azioni v. M/V Caribbean Exp.*, No. 97-3855, 1999 WL 30966 (E.D. La. Jan. 21, 1999) (denying motion to compel Rule 30(b)(6) deposition where the notice was insufficiently particularized).
[22] Fed. R. Civ. P. 26(c)(1).

4

and conclusory statements."[23]

If a party fails to answer an interrogatory under Rule 33 or fails to respond fully to a request for production in the time allowed these Rules, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37.[24] Likewise, if a deponent fails to answer a question asked under Rule 30, the party seeking the deposition may move to compel a response and for appropriate sanctions under Rule 37.[25] "An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."[26] "Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections."[27] "A party objecting to discovery 'must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'"[28]

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[29] Blanket assertions of a privilege are

[23] *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998), quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).
[24] Fed. R. Civ. P. 37(a)(3)(b)(iii) and (iv).
[25] Fed. R. Civ. P. 37(a)(3)(b)(i).
[26] Fed. R. Civ. P. 37(a)(4).
[27] *Vasquez v. Conquest Completion Services, LLC*, No. 15-188, 2018 WL 3611891, at *2 (W.D. Tex. Jan. 10, 2018), citing *Cheshire v. Air Methods Corp*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (citing *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).
[28] *Vasquez*, 2018 WL 3611891 at *2, citing *Cheshire*, 2015 WL 7736649 at *4 (quoting *Reyes v. Red Gold, Inc.*, No. 05-191, 2006 WL 2729412, at *1 (S.D. Tex. Sept. 25, 2006)).
[29] Fed. R. Civ. P. 26(b)(5)(A).

unacceptable, and the court and other parties must be able to test the merits of a privilege claim.[30]

## B.    Analysis

Given the considerable overlap in matters for which Plaintiff seeks to compel responses or production and for which Defendants seek a protective order, the subjects will be grouped and analyzed that way.[31]

### 1.    Reasons for Plaintiff's Termination[32]

In defense of Plaintiff's claims, Defendants assert there are numerous "legitimate, non-retaliatory reasons" for which the Firm terminated Plaintiff's employment. In Defendants' own words, those reasons are:

---

[30] *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982), citing *U.S. v. Davis*, 636 F.2d 1028, 1044 fn. 20 (5th Cir. 1981).

[31] Relying solely on an unreported case from a sister court, Defendants have refused to respond to certain "contention" requests, arguing that those requests are more appropriately addressed "near the end of the discovery period." *See, e.g.*, R. Doc. 21-3, at Nos. 8-11. By the time the Motions were filed on May 26, 2021 and May 31, 2021, the fact discovery period was closed or almost closed. *See* R. Doc. 17 (setting fact discovery deadline of May 31, 2021). Although the parties will be given some additional time to comply with this Order since a timely request to stay the fact discovery period was granted (R. Doc. 24), considering that this matter is "near the end of the discovery period," the Court need not address the merits of Defendants' objections to "contention" requests. Defendants may no longer resist discovery on these grounds and must fully respond to all "contention" requests. Additionally, to the extent Defendants argue that the language of the requests (in this group and others) seeking "any and all" information or documents related to a topic is overly broad, the extensive guidance provided in the June 3, 2021 and this Ruling clarify those issues.

[32] *See* R. Doc. 18-6 (Rule 30(b)(6) Notice of Deposition to the Firm), at Topic Nos. 1, 20 (process by which Plaintiff applied to, was recruited by, was hired, and was fired by the Firm), No. 2 (Plaintiff's job duties with the Firm), No. 3 (any alleged "shortcomings" in Plaintiff's job performance, including warnings, discipline, or counseling provided to Plaintiff), No. 4 (any alleged prejudice suffered by the Firm's clients because of Plaintiff's errors or shortcomings in the performance of his jobs duties), Nos. 22, 23, 30 ( No. 28 (the Firm's asserted reasons for terminating Plaintiff or otherwise separating him from employment in April 2020), No. 29 (any alleged wrongdoing committed by Plaintiff during employment with the Firm but not discovered until after his employment ended), No. 31 (any video or audio recordings of Plaintiff or of conversations referencing Plaintiff); R. Doc. 21-3 (Defendants' Objections to Plaintiff's First Set of Requests for Production), at No. 1 (Plaintiff's complete personnel file), No. 2 (all text messages, emails, voicemails, etc. between Plaintiff and Fisher, or any employee of the Firm, from March 19, 2020 – April 15, 2020), No. 3 (all text messages, emails, voicemails, etc. sent or received by Fisher, or any agent or employee of the Firm referencing Plaintiff, from March 19, 2020 – present), No. 4 (all text messages, emails, voicemails, etc. sent or received by Fisher, or any agent or employee of the Firm, on April 2, 2020), No. 5 (all text messages, emails, voicemails, etc. referenced in the Complaint and/or Answer), No. 8 (any documents supporting "any alleged legitimate or non-discriminatory reason for Plaintiff's termination," *i.e.*, Defendants' Eighth Affirmative Defense), No. 9 (any documents supporting Defendants' after-acquired evidence defense, *i.e.* Defendant's Seventh Affirmative Defense), No. 10 (any documents supporting Defendants' fault of third parties defense), No. 11 (any documents supporting Defendants' contention that Plaintiff violated any provision of law, policy, regulation or statute), No. 12 (any employment handbook or policies applicable to Plaintiff), No. 14 (all documents or communications reflecting Defendants' recruitment and hiring of Plaintiff), Nos. 15 and 30 (all documents or communications relating to Plaintiff's termination), No. 16 (all documents or communications the July 10, 2020 letter from Plaintiff's counsel).

Then, in January 2020, Barback became a W-2 employed attorney for Fisher, LLC.[1] On April 2, 2020, Barback's employment with Fisher, LLC was terminated because of his poor job performance; poor productivity; inability to handle basic tasks, such as client intake meetings; not being goal-oriented; inability to get along well with his co-worker(s); continual complaints about tasks that he believed were "non-lawyer" tasks, such as updating case status lists; and being the most expensive and last hired Fisher, LLC employee at a time when Fisher reasonably believed that operating costs needed to be decreased due to the Coronavirus pandemic.[2]

Considering the defenses asserted, Plaintiff has asked for written discovery, as well as the Firm's 30(b)(6) deposition on these defenses. Defendants have objected to these requests and deposition topics, in whole or in part, on multiple grounds.[33] However, the thrust of Defendants' objections are that these requests and proposed deposition topics would require "disclosure of [the Firm's] confidential information regarding client identifies, work product, and attorney-client privileged information without having first received client consents in violation of Louisiana Rule of Professional Conduct 1.6."[34]

Given that the information and documents sought are clearly relevant to the asserted defenses in this case, the crux of the parties' dispute is whether Defendants can shield relevant, responsive documents from disclosure (or prevent a representative of the Firm from testifying about these issues during a Rule 30(b)(6) deposition) based on privilege while simultaneously using that information to defend against Plaintiff's claims. Under Rule 26(b)(5), a party may "withhold information otherwise discoverable by claiming that the information is privileged." When a party withholds information on this basis, the party must also "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that…will enable other parties to assess the claim."[35]

---

[33] *See, e.g.*, R. Doc. 18, p. 3.
[34] *See, e.g.*, R. Doc. 18, p. 3, at Nos. 3-4; R. Doc. 18-4, at No. 15.
[35] Fed. R. Civ. P. 26(b)(5)(A).

However, a party may waive its ability to assert privilege if it places privileged material at issue in this litigation. As this Court recently explained:

> The attorney-client privilege "was intended as a shield, not a sword." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989). As such, when the privilege holder makes a confidential communication a material issue in litigation, "fairness demands treating the defense [or claim] as a waiver of the privilege." *Conkling*, 883 F.2d at 434; *see also Asset Funding Group, LLC v. Adams & Reese, LLP*, 2008 WL 4186884, at *4 (E.D. La. Sept. 9, 2008) ("Waiver includes conduct which would make it unfair for the client to insist on the privilege thereafter."); *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999) (recognizing "a client's inability to, at once, employ the privilege as both a sword and a shield."). In other words, a waiver occurs when the holder pleads a claim or defense in such a way that it will inevitably have to "draw upon a privileged communication in order to prevail." *Conoco Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 110 (W.D. La. 1998).[36]

Even assuming the matters sought are privileged,[37] by asserting—and maintaining—certain defenses, including "poor job performance" and "inability to handle basic tasks, such as client intake meetings," Defendants have placed at issue information relating to their representation of certain clients, who Plaintiff also represented while employed by the Firm. Because Defendants are trying to use this privileged material as both a sword and a shield, they have waived any privilege over this information.[38]

Further, Louisiana Rule of Professional Conduct 1.6 offers no sanctuary to Defendants. While Defendants have indicated that have found no applicable exceptions in Rule 1.6 that would allow

---

[36] *Blackmon v. Brack Construction Co., Inc.*, No. 18-142, 2020 WL 6065520, at *6-7 (M.D. La. Oct. 14, 2020), *aff'd* 2021 WL 2150694 (M.D. La. May 26, 2021).

[37] It is not clear that information related to Plaintiff's job performance would be privileged because such communications would not appear to be for the purpose of rendering legal advice. Additionally, Defendants do not address Plaintiff's argument that the purpose of the privilege is to protect against the release of confidential communications *to third parties*, which Plaintiff was not for the time period when he was working for the Firm and representing these clients. S*ee, e.g.*, *LeBlanc v. Texas Brine Co., LLC*, No. 12-2059, 2019 WL 5265063, at *4 (E.D. La. Oct. 17, 2019) (to establish attorney-client privilege under La. Code Evid. 506, a party must show that the information sought is "confidential communications" made "outside the presence of third parties for the purpose of giving or obtaining an opinion on the law or legal services.").

[38] Defendants' argument that they are not alleging any client complaints so that this information is not relevant is unavailing. Among Defendants' stated reasons for Plaintiff's termination were his job performance … as a lawyer with the Firm … representing clients. While there may have been other reasons for Defendants' displeasure with Plaintiff's performance, *e.g.*, administrative deficiencies, specific reference to Plaintiff's inability to accomplish tasks like client intake meetings, makes client information relevant to asserted defenses.

them to produce the requested materials without the consent of their clients, the Court has.[39] Rule 1.6(6) specifically allows privileged material to be disclosed "to comply with other law or a court order." Indeed, multiple district courts addressing nearly identical Rules of Professional Conduct have held that Rule 1.6 does not preclude an attorney from producing evidence in a judicial proceeding.[40]

Plaintiff's requests relating to the non-financial reasons he was purportedly terminated seek relevant information that Defendants have placed at issue based on the defenses asserted, such that these are proper areas of inquiry for discovery and/or deposition. Accordingly, Defendants' objections as to these requests are overruled.[41] Additionally, while Defendants' responses and responsive documents are subject to the terms of the parties' Protective Order,[42] Defendants must produce these documents in unredacted form,[43] as there is no other way for Plaintiff to adequately test Defendants'

---

[39] Defendants' argument as to their ethical obligations is unpersuasive in other regards. First, Rule 1.6(b)(5) permits a lawyer to reveal information relating to the representation of a client to the extent the lawyer believes necessary…to establish a defense to a…civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceedings concerning the lawyer's representation of the client…" Arguably the defenses asserted in this case bring these matters within the scope of Rule 1.6(b)(5), however, because of Rule 1.6(b)(6), the Court need not reach a determination on whether this exception is applicable. Second, Defendants reading of Rule 1.6(a) seems to suggest that Plaintiff, and not Defendants, would have to obtain the consent of Defendants' clients before Defendants could produce privileged material. In some of Defendants' discovery responses, they indicate that certain documents have been produced with "client information redacted." Absent from Defendants' argument is any explanation as to how Plaintiff is supposed to obtain consent when Defendants have not identified those clients for whom Plaintiff purportedly provided substandard representation. A more straightforward reading of Rule 1.6 suggests that Defendants have the obligation to obtain their clients' informed consent to reveal information relating to the representation. Yet, Defendants' briefing is devoid of any indication that they attempted to obtain consent.

[40] *See, e.g., Asset Funding Group, LLC v. Adams & Reese, LLP*, No. 07-02965, 2008 WL 11353767, at *2 (E.D. La. May 23, 2008) (overruling defendant law firm's general objection that discovery request sought "information concerning communications or work for other clients, all such information was obtained, received, prepared, and accumulated, subject to the attorney-client privilege, as work product, and as confidential information with the meaning of Rule 1.6 of the Rules of Professional Conduct," such that the information could not "be disclosed without the informed consent of the affected client."); *Summerville v. Moran*, No. 14-2009, 2016 WL 233627, at *3 (S.D. Ind. Jan. 20, 2016) (granting motion to compel over party's objection to producing about 1,200 on the grounds that it would violate Indiana's Rule of Professional Conduct 1.6, which is similar to Louisiana's Rule 1.6); *Zino v. Whirlpool Corp.*, No. 11-1675, 2012 WL 5197377, at *5 (N.D. Ohio Oct. 19, 2012) (finding that the "rule of client-attorney confidentiality as set forth in Rule 1.6 of the Ohio Rules of Professional Conduct," which is similar to Louisiana's Rule 1.6, "does not apply to restrict testimony in judicial proceedings such as this one"); *F.T.C. v. Trudeau*, No. 3-3904 , 2013 WL 842599, at *4 (N.D. Ill. Mar. 6, 2013) (same) (citations omitted).

[41] *See* fn. 32.

[42] R. Doc. 15.

[43] While Defendants argue that Plaintiff does not need this information in unredacted form, specific client names and information are necessary to test the defense that Plaintiff's performance was poor. To the extent Defendants argue that there are particular matters where Plaintiff did not perform to a reasonable standard, providing Plaintiff with identifying information is the only way for Plaintiff to test Defendants' theory. Even if most of the issues with Plaintiff's performance

defenses.[44]

### 2.    Firm-Related Financial Reasons for Plaintiff's Termination[45]

Defendants' other purported legitimate, non-retaliatory reasons for terminating Plaintiff is that, near the beginning of the Covid-19 pandemic, Fisher "reasonably" believed that the Firm's operating expenses needed to be lowered, so, as the most recently hired and most expensive employee, Plaintiff was terminated. Because the only way for Plaintiff to test this defense, including whether the Firm's operating expenses did, in fact, need to be lowered and/or whether Fisher's beliefs regarding same were reasonable, is to look at the Firm's financial documents and what information Fisher had available to him at that time, Defendants have put the Firm's financial condition at issue. As such, Plaintiff's discovery requests and deposition topics related to determining the Firm's financial position around the time he was terminated are relevant. Similarly, Plaintiff's requests related to whether the Firm applied for and/or received PPP funds, as well as what statements the Firm made about its financial position and operating expenses during that process, are also relevant.[46]

---

were administrative, Plaintiff may seek to contact clients in cases Defendants have identified to get their perspective on Plaintiff's performance in other areas.

[44] This Ruling does not apply to documents created by Defendants or their counsel in anticipation of this action, nor does it apply to communications between Defendants and counsel in this action; however, consistent with Rule 26(b)(5), those items must be sufficiently identified and described on a privilege log.

[45] *See* R. Doc. 18-6 (Rule 30(b)(6) Notice of Deposition to the Firm), at Topic No. 8 (the Firm's financial condition, including its current balance sheet and average monthly expenditures, as of March 29, 2020), No. 9 (inquiries or applications related to loans or any source of government funding, including the Paycheck Protection Program ("PPP"), regardless of whether loans/funds were received), No. 10 (any inquiries or applications related to forgiveness or remission of any such loans/funding), No. 13 (any new client who retained Defendant from March 29, 2020 – July 25, 2020), Nos. 14 and 15 (attorneys' fees collected by the Firm from January 1, 2020 – March 29, 2020 and from March 29, 2020 – July 25, 2020), No. 18 (the Firm's total profit or losses for the 2019 and 2020 fiscal years), No. 19 (money or property transferred by the Firm to Fisher and/or his spouse during the relevant time period), No. 24 (all Firm bank accounts for the last three years), Nos. 25-27 (assets of the Firm, including real or immovable property, cash, accounts, etc.), No. 28 (reasons for Plaintiff's termination); R. Doc. 21-3 (Defendants' Responses to Plaintiff's First Set of Requests for Production of Documents), at No. 19 (documents reflecting value of settlements confected by the Firm from January 1, 2020 – April 30, 2020), No. 21 (documents relating to any PPP application made by the Firm, including the application, all documents submitted with the application, all documents received from any financial institution relating to same, and all documents reflecting any funds received), No. 22 (all Firm financial records for tax year 2020 and/or the first two quarters of calendar year 2020, including any financial statements, balance sheets, income statements, profit and loss statements, and cash flow statements), No. 23 (all tax filings for the Firm for the 2020 tax year, including all IRS Forms, 940, 941, 944, or 945).

[46] Defendants claim that Plaintiff's request for PPP-related documents is a "fishing expedition" that has nothing "to do with his objections to any practices that would be relevant to Defendants' PPP application (to the extent he knows if one

However, just because these requests and topics are relevant, Plaintiff does not have *carte blanche* to obtain all information he seeks. Indeed, Defendants raise other objections regarding these requests, including the overbreadth of the proposed timeframe, the fact that these requests "intrude on confidential/proprietary information"; are "harassing"; seek "personal, confidential, and/or sensitive information regarding individuals who are not parties to this suit"; and seek "immaterial information as Plaintiff was not a W-2 employee during 2019."[47] Some of these objections are well-founded, but others are not.

As to the objections regarding the confidential/proprietary nature of the documents and the that they may contain information about nonparties, Defendants' concerns appear to be addressed by the parties' Protective Order.[48] For example, the first paragraph of the Protective Order, which the parties jointly requested to "facilitate discovery and the production of relevant evidence in this action," contemplates that Plaintiff may request and/or Defendants may be required to produce the following:

> IT IS ORDERED THAT, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, documents and/or information produced in discovery or disclosed in pleadings, depositions, motions, supporting memoranda, declarations, affidavits, and/or other means, or exhibited by and/or among the parties to this action relating to (1) Any records referring to Defendants' current or former clients, or active litigation involving Defendants' clients; (2) Defendants' trade secrets or other confidential or proprietary research, development, or commercial/business information; and/or (3) the personnel or pay records concerning Defendants' current employees or former employees who are not a party to this action, are deemed confidential.

As the stated purpose of the Protective Order was to facilitate the production of confidential and/or proprietary information in this litigation, Defendants cannot refuse to respond to discovery or

---

even exists)." R. Doc. 30, pp. 8-9. The PPP is a Small Business Administration backed loan that was intended to help businesses keep their workforce employed during the COVID-19 crisis. https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program. Parties seeking PPP loans were required to provide certain financial information. The financial information Defendants may have provided to the government in connection with a PPP loan is relevant to Plaintiffs' claims. If neither Defendant submitted a PPP application nor obtained PPP funds, that needs to be explicitly stated in discovery responses.

[47] *See*, e.g., R. Doc. 21-3, at No. 18.
[48] R. Doc. 15.

withhold documents on these grounds.

Second, Defendants' claim that this information is immaterial because Plaintiff was "not a W-2 employee in 2019" is peculiar. Defendants go to great lengths to break Plaintiff's employment at the Firm into two periods—a contract attorney (from October 2019 to January 2020) and a W-2 employee (from January 2020 to April 2, 2020). However, that distinction does not make Plaintiff's request less material. Rather, the opposite is true. Defendants hired Plaintiff around October 2019, then made him a W-2 employee just before the COVID-19 pandemic took hold. Presumably, Defendants were aware of the Firm's financial status before October 2019, at least sufficiently to determine whether the Firm could support another attorney—contract or otherwise. Before moving Plaintiff from a contract attorney to a W-2 employee in January 2020, it is again presumed that the Firm's financial position was considered. The Firm's information for the relevant time will also allow Plaintiff to gather evidence regarding Defendants' argument about Fisher's beliefs as to the Firm's operating expenses, and whether those beliefs were reasonable in light of the financial information. This weighs in favor of finding information regarding the Firm's financial condition relevant and discoverable, with respect to the time of Plaintiff's hiring, change to a W-2 employee, and termination. Defendants' boilerplate statement that Plaintiff's requests are "harassing" is not sufficient to carry Defendants' burden of substantiating their objection as to the Firm's financial information for the relevant time.

Regarding the timeframe of Plaintiff's financial-related discovery requests and deposition topics, Plaintiff designated May 2019 through present as the relevant time period. Plaintiff contends that this period is relevant for two reasons: (1) "it is approximately the time frame when [Plaintiff] first began speaking to [Fisher] about potential employment," and (2) it "constitutes one calendar year prior to [Plaintiff's] termination."[49] Defendants argue that Plaintiff's "very short tenure" with the

---

[49] R. Doc. 26, p. 3.

Firm, precludes Plaintiff from "conduct[ing] wholesale discovery on the broad time period of May 2019-present."[50]

Defendants claim that they are not liable to Plaintiff because there were several non-retaliatory and/or legitimate reasons to terminate his employment. One of those asserted reasons is that Fisher "reasonably believed that operating costs needed to be decreased due to the Coronavirus pandemic" and Plaintiff was the "most expensive and last hired" Firm employee.[51] There is no dispute that Plaintiff was employed by the Firm from October 2019 through April 2, 2020. Relatedly, Defendants do not appear to challenge Plaintiff's statement that Fisher began recruiting him at some point prior to October 2019. As such, permitting Plaintiff to obtain relevant and responsive documents concerning the Firm's financial condition and operating expenses leading up to Plaintiff's hiring is reasonable. Likewise, permitting Plaintiff to obtain relevant and responsive documents concerning the Firm's financial condition (and other defenses raised by Defendants) at the time he was terminated is also reasonable. However, Defendants are correct that May 2019 through present is overly broad.

Thus, unless stated otherwise with regard to specific requests (or categories thereof), the temporal limitation on discovery related to the Firm's financial condition will be August 1, 2019 through May 1, 2020. Defendants will be required to provide responsive information to the requests/topics at issue, subject to this restriction.[52] The information will allow Plaintiff to compare the Firm's operating expenses (and overall financial position) immediately prior to his hiring with the Firm's operating expenses (and overall financial position) at the time of, and immediately after, his firing, which will allow Plaintiff to test Defendants' assertions that he was the last hired and most expensive, as well as the reasonableness of Fisher's belief that the Firm's "operating costs" needed to be (and were) decreased.

---

[50] R. Doc. 18-2, p. 12.
[51] R. Doc.18-3 (Defendants' Objections and Responses to Plaintiff's First Set of Interrogatories), at No. 5.
[52] *See* fn 45.

### 3.   Information Relating to Fisher's Personal Financial Condition[53]

Plaintiff also has numerous requests regarding Fisher's personal finances. As with the Firm's financial information, Plaintiff argues these requests/topics are relevant (a) his claim for punitive damages and (b) Defendants' defense regarding the "operating costs" and the "economic effects of the pandemic" on the Firm.[54] Additionally, Plaintiff "believes" that Defendants' financial-related reason for terminating him "is bogus, and the [F]irm (and Fisher personally) had more than sufficient financial reserves."[55]

Defendants oppose these requests/topics.[56] They argue that Plaintiff's "reasons do not support production of the broad scope of financial information sought."[57] Specifically, Defendants contend that while the "Fifth Circuit has not directly addressed the availability of punitive damages in FLSA retaliation claims," there is "no established basis for Plaintiff's punitive damages claim under the FLSA."[58] Relatedly, Defendants contend that the cases relied on by Plaintiff are distinguishable because those cases dealt with claims under 42 U.S.C. §§ 1981 and 1983, which—unlike the FLSA— explicitly provide for punitive damages. Second, Defendants contend that one of its stated reasons for terminating Plaintiff, "which was related in part to Fisher's reasonable belief that operating costs for [the Firm] needed to be decreased, does not provide a basis for the wide array of financial information sought against both Defendants."[59] Further, Defendants argue that discovery of Fisher's individual financial information (and/or his wife's), particularly through Plaintiff's Second Set of Requests for Production of Documents, "have absolutely nothing to do with the operating costs" of the Firm.

---

[53] *See* R. Doc. 21-12 (Fisher's Objections and responses to Plaintiff's Second Set of Interrogatories), at Nos. 17-23 (all relating to Fisher's personal financial condition); Doc. 21-3 (Defendants' Responses to Plaintiff's First Set of Requests for Production of Documents), at No. 23 (all tax filings for Fisher for the 2020 tax year, including all IRS Forms, 940, 941, 944, or 945); and R. Doc. 18-6 (Rule 30(b)(6) Notice of Deposition to the Firm), to the extent that any of the proposed deposition topics, except Nos. 8, 16, 17, 19, could be read to include Fisher's personal financial information/condition.
[54] R. Doc. 21-2, pp. 14-16.
[55] *Id*. at p. 16.
[56] R. Doc. 30, pp. 5-8.
[57] *Id*. at p. 5.
[58] *Id*. at p. 6.
[59] *Id*. (emphasis in original).

Moreover, Defendants explain that Fisher's personal "financial reserves" have nothing to do with the Firm's operating costs.

Here, Plaintiff's argument that Fisher personally "had more than sufficient reserves," such that decreasing the operating expenses of the Firm was unnecessary, is unpersuasive for two reasons. First, under Louisiana law, an LLC is a "separate legal entity from its members,"[60] and the members, managers, employees, or agents of an LLC are generally not liable "in such capacity for a debt, obligation, or liability of the [LLC]," except as provided for under La. R.S. § 12:1301, *et seq*.[61] Plaintiff has failed to show how Fisher is obligated to use his personal assets (or those of his wife), whatever they may be, to fund the operations of the Firm.

Second, the cases relied on by Plaintiff to attempt to show that Fisher's personal resources are relevant to his punitive damages claim are distinguishable. In *Tingle v. Hebert*, this Court granted plaintiff's motion to compel certain information and documents related to defendant's "net worth" after finding it relevant to plaintiff's claims for punitive damages under 42 U.S.C. § 1983.[62] Similarly, in *Randolph v. Shuga Smack Jac, L.L.C.*,[63] this Court again found that "in the context of employment discrimination claims," the defendant's "net worth [was] relevant, discoverable, and admissible to evaluate a plaintiff's punitive damages claim." Unlike those cases, Plaintiff's purported claim for punitive damages is in the context of his FLSA retaliation claim; however, as both parties acknowledge, whether punitive damages are available under the FLSA is not settled in this Circuit.

---

[60] *See* La. R.S. § 12:1304. *See also Cutrer v. TWT Transport, L.L.C.*, 485 F.Supp.3d 677, 687-88 (M.D. La. Sept. 9, 2020); *Coco Oil & Gas, LLC v. Terry*, No. 11-168, 2011 WL 3268577, at *5 (E.D. La. July 28, 2011).

[61] *See* La. R.S. § 12:1320. *See also Cargill, Inc. v. Clark*, No. 14-233, 2015 WL 4715010, at *8 (M.D. La. Aug. 7, 2015) (discussing *Ogea v. Merritt*, 130 So.3d 888 (La. 2013), holding that generally "an individual member [of an LLC] is not personally responsible for the liabilities of an LLC beyond the member's capital contributions, with only specifically enumerated exceptions in cases of fraud, breach of professional duty, and other 'negligent or wrongful act.'").

[62] No. 15-626, 2017 WL 2335646, at *5 (M.D. La. May 30, 2017).

[63] No. 19-865, 2020 WL 5984354, at *5 (M.D. La. Oct. 8, 2020). In *Randolph*, plaintiff claimed that she was improperly terminated "as a result of taking maternity leave for the birth of a child. *Id*. at *1.

The uncertainty of the availability of punitive damages under the FLSA, Plaintiff's failure to establish that Fisher's personal information is relevant to any claim other than punitive damages, the highly sensitive nature of personal financial information, and the fact that Defendants have been ordered to produce the Firm's financial information for the relevant time period, require a finding that Plaintiff has failed to carry his burden of establishing the relevance and proportionality of his discovery requests and deposition topics that seek Fisher's personal financial information. Accordingly, Defendants' request for a protective order as to these requests will be granted, while Plaintiff's Motion to Compel as to these requests will be denied.[64]

### 4.    The Work-For-Free Scheme[65]

Plaintiff claims that he was terminated in retaliation for refusing to participate in a "work for free scheme" concocted by Fisher to "defraud the state unemployment insurance fund into paying salaries of his very profitable, and still operating, law firm," and encouraging another employee to do the same.[66] Plaintiff seeks discovery, and to depose a representative of the Firm, regarding this "scheme." He has requested information and documents related to applications for unemployment

---

[64] *See* fn. 53. To the extent that the Firm's financial information and documents produced in response to this Ruling reflect payments to Fisher, his wife, or any other third parties, that information is discoverable in unredacted form but subject to the parties' Protective Order.

[65] *See* R. Doc. 18-6 (Rule 30(b)(6) Notice of Deposition to Firm), at No. 5 (any communications between Firm, or any of its employees or agents) with the Louisiana Workforce Commission or the U.S. Dept. of Labor during relevant period), Nos. 6 and 7 (all applications for unemployment insurance filed by any of the Firm's employees or agent, including the Firm's response to those applications, and any communications related to same), No. 11 (any work performed by any employee or former employee of the Firm on behalf of its clients from March 29, 2020 – July 25, 2020), No. 12 (all communications among or between any of the Firm's employees or former employees sent to/from a "fisherinjurylawyers.com" email address from March 29, 2020 – July 25, 2020), No. 16 (any money or benefits paid to the Firm's employees or former employees from March 29, 2020 and July 25, 2020), No. 17 (any bonuses paid by the Firm after March 29, 2020); R. Doc. 21-3 (Defendants' Responses to Plaintiff's First Set of Requests for Production), at Nos. 6-7 (all memoranda or communications from Fisher to Firm employees regarding unemployment insurance or unemployment applications, and records sent to or received from the Louisiana Workforce Commission regarding an unemployment claim made by Firm employees), No. 18 (all emails, text messages, or other documents referencing or requesting that any Firm employee "volunteer" to work for the Firm), No. 20 (all emails or other documents reflecting whether Firm employees performed work for the firm while accepting unemployment payments or while not received a wage of salary), No. 24 (documents reflecting payroll taxes withheld or paid by the Firm during the relevant period), Nos. 25 - 26 (payroll records, including all payroll checks, for all Firm employees and payroll ledger during the relevant time period), No. 27 (all documents, including communication, text messages, etc., relating to laying off, furloughing, terminating, or otherwise separating from employment any of the Firm's employees).

[66] R. Doc. 21-2, pp. 1, 16.

from Firm employees in March and April 2020 and the Firm's responses to those applications, communications between Fisher and others regarding unemployment and this scheme, and information and documents, including communications, that may evidence work being done by Firm employees while simultaneously claiming unemployment benefits.[67] Defendants object to these requests.[68] Defendants claim that Plaintiff's "misleading and unsupported statements…should not be the basis for expanded discovery."[69]

Because Plaintiff claims that he was fired in retaliation for not participating in Fisher's purported "work-for-free" scheme, these requests and deposition topics are relevant. Defendants are reminded that discovery is broad, and the Court will not skip over the discoverability of this information to delve into the merits of Plaintiff's claims at this juncture. Either Plaintiff's claims about a "work-for-free" scheme will be borne out in discovery or they will not. After all parties have had an opportunity to review this information, they can address the merits of Plaintiff's claims through the proper procedural vehicle. Additionally, the parties' Protective Order is sufficient to allay any concerns regarding the confidential or sensitive nature of any of the requested documents or topics. Plaintiff's requests related to the purported "work-for-free" scheme are relevant to his claims, and, thus, the requested information and documents must be produced.[70]

---

[67] R. Doc. 21-2, pp. 14-17.

[68] R. Doc. 30, pp. 1-2, 8-9.

[69] R. Doc. 30, pp. 1-2. As to the "misleading" statements, Defendants contend: (1) "Plaintiff claims that he refused to apply for unemployment when his own testimony proves that he did in fact apply for unemployment benefits"; (2) that although Plaintiff claims he "refused to work for free and that Fisher reduced his salary; yet Plaintiff was never required to work for free and testified that through his termination, his salary was not actual reduced"; and (3) that Plaintiff never voiced his concern that "Fisher was unlawfully using Covid-19 relief fund to cover his own payroll," so it "cannot be part of his whistleblower or retaliation claims." *Id*.

[70] *See* fn. 65.

**C.    CONCLUSION**

Accordingly, based on the forgoing,

**IT IS ORDERED** that the Motion to Compel,[71] filed by Plaintiff Brad Barback, is **GRANTED IN PART** and **DENIED IN PART**. Consistent with this Ruling, Defendants Bryan D. Fisher and Bryan D. Fisher, LLC must provide complete responses to Plaintiff's discovery requests and all responsive documents in unredacted form, but subject to the parties' Protective Order, regarding the following categories of requests: the stated non-retaliatory reasons for Plaintiff's termination; the Firm's financial condition; and the "work-for-free" scheme, as more specifically set out in this Ruling and Order. The Motion is denied in all other respects.

**IT IS FURTHER ORDERED** that the Motion for Protective Order,[72] filed by Defendants Bryan Fisher and Bryan D. Fisher, LLC, is **GRANTED IN PART** and **DENIED IN PART**. Consistent with this Ruling, Fisher is not required to respond to Plaintiff's Second Set of Discovery Requests,[73] nor is either Defendant required to respond to Plaintiff's discovery requests and/or provide a representative to testify regarding, Fisher's personal financial condition, as more specifically set out in this Ruling and Order. The Motion is denied in all other respects.

Signed in Baton Rouge, Louisiana, on March 30, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[71] R. Doc. 21.
[72] R. Doc. 8.
[73] *See* R. Doc. 18-5.

18